**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS E. HOFFMANN AND HOFFMANN AIR CONDITIONING & HEATING, LLC**,** a Missouri limited liability company, | ) ) ) ) | **Case No. 4:19-cv-00206-RWS** |
| Plaintiffs**,** | ) ) ) | |
| **v.** | ) ) | |
| HOFFMANN BROTHERS HEATING AND AIR CONDITIONING, INC., a Missouri corporation, | ) ) ) ) | |
| Defendant**.** | ) ) | |

**<u>FIRST AMENDED COMPLAINT</u>**

Plaintiffs Thomas E. Hoffmann and Hoffmann Air Conditioning & Heating, LLC, as and for their First Amended Complaint against Defendant Hoffmann Brothers Heating and Air Conditioning, Inc., state and allege:

**<u>Parties</u>**

1.      Plaintiff Thomas E. Hoffmann (hereinafter, "Tom") is an individual residing in the County of St. Louis, Missouri.

2.      Plaintiff Hoffmann Air Conditioning & Heating, LLC (hereinafter, the "Company") is a Missouri limited liability company with its principal place of business in St. Louis County, Missouri.

3.      Defendant Hoffmann Brothers Heating and Air Conditioning, Inc. (hereinafter, "Hoffmann Brothers") is a Missouri corporation with its principal place of business in St. Louis County, Missouri.

67871678.2

**Jurisdiction and Venue**

4.      This is an action for declaratory judgment under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended (the "Lanham Act"); for common law defamation, fraud, tortious interference, invasion of privacy, intentional infliction of emotional distress, and civil conspiracy under the laws of the State of Missouri; and for breach of contract under the laws of the State of Missouri.

5.      The Court has subject matter jurisdiction over the instant matter under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338 and 1367.

6.      This Court has personal jurisdiction over Defendant because Defendant does business and resides in the State of Missouri and in this District, and because Defendant's wrongful acts described herein include acts committed in this District.

7.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this judicial district, and this is the District in which events giving rise to the claims hereinafter set forth occurred.

**Prior Litigation Regarding Hoffmann Brothers**

8.      Prior to July 14, 2011, Tom and Robert J. Hoffmann (hereinafter, "Robert") owned and operated Hoffmann Brothers for over 15 years.

9.      On October 6, 2010, Robert filed suit against Tom in an attempt to force Tom out of ownership of Hoffmann Brothers (the "First Lawsuit").

10.      The First Lawsuit was resolved with the parties entering into a Settlement Agreement dated July 14, 2011 (the "Agreement").

67871678.2

## The Settlement Agreement

11.     The Agreement required Tom to transfer his stock in Hoffmann Brothers to Robert and Mary S. Hoffmann (hereinafter, "Mary") in exchange for certain payments and other agreements.

12.     Tom was prohibited under the Agreement for a period of four (4) years from July 14, 2011 from using the "Hoffmann name within the business name of an HVAC business (nothing herein shall prohibit Tom from working for another company and have his personal name listed, displayed or otherwise used by said company)," (hereinafter referred to as the "Trade Name Protection Clause").

13.     The Agreement contained a Non-Disparagement clause which states:

> *The Parties agree, for themselves, their agents, and their representatives, that no Party will make any disparaging statement or comment to any person or entity, by any medium, about any other Party. For purposes of this Agreement, "disparaging statements" shall include any communication, whether verbal or non-verbal, expressed or implied, which may actually or potentially cause harm to the reputation or business interests of any Party, whether true or not.*

14.     The Agreement provides that in any action for breach of its terms, the prevailing party shall be entitled to recover its reasonable attorney's fees, costs and expenses.

## Tom's Use of Hoffmann in Company Name

15.     After leaving Hoffmann Brothers, Tom honored the Agreement by not using his last name in his new business, "Engineered Solutions", through the entirety of the four (4) year period required by the Trade Name Protection Clause.

16.     Before the expiration of this provision, Tom filed Articles of Organization for a limited liability company named Hoffmann Air Conditioning & Heating, LLC and purchased the domain name "hoffmannairconditioning.com."

67871678.2

17.      However, Tom did not transact any business, advertise any services, or otherwise utilize the name "Hoffmann" as a part of the Company name or "hoffmannairconditioning.com" during the four-year period required by the Trade Name Protection Clause. Tom merely registered the company and purchased the domain name to prepare for entry into the marketplace when the Trade Name Protection Clause expired.  The filing of Articles of Organization and the registration of a domain name do not constitute use in commerce.

18.      In the summer of 2017, the Company began conducting business.

19.      On January 25, 2019, Defendant Hoffmann Brothers' attorney sent a letter to Tom demanding that Tom and the Company "cease and desist" from using the Hoffmann name as part of the trade name of the Company.

20.      The Trade Name Protection Clause expired on July 14, 2015.

21.      The Company's use of the name "Hoffmann" is not prohibited by Federal or Missouri state law.

22.      The use of the name "Hoffmann" does not cause a likelihood of confusion with the alleged ownership by Defendant of the "Hoffmann Brothers" mark. The name "Hoffmann" as used by the Company is different and distinct from "Hoffmann Brothers." The fonts, colors and full names of the companies are different, separate and distinct.

23.      The Company's invoices and stickers further clarify the distinction by including the name "Thomas Hoffmann" thereon.

24.      Tom and the Company are legally authorized to use Tom's surname "Hoffmann" in the name of their business. Defendant has not registered the service mark "Hoffmann" but rather registered the trademark "Hoffmann Brothers" and design on December 8, 2017 with the Missouri Secretary of State.  Defendant has applied to the U.S. Patent and Trademark Office for

4

trademark registrations for the "Hoffmann Brothers" word mark, as well as Hoffmann Brothers and design.  The U.S. Patent and Trademark Office rejected the "Hoffmann Brothers" word mark application on March 15, 2019 on the basis of likelihood of confusion and that the mark applied for is merely a surname.  The design mark application has not yet been examined by the U.S. Patent and Trademark Office.  Defendant has not appropriated the mark "Hoffmann" and could not legally do so.

25.     Another entity operates a heating and air conditioning business in the St. Louis area using the name "Hoff Heating and A/C, Inc."  Yet another entity operates a plumbing and heating business in the St. Louis area using the name "Hoffman Plumbing & Heating" – and, on information and belief, has done so since 1981.  There is yet another entity using the name "Hoffman Plumbing" in Warrenton, Missouri.  On information and belief, Hoffmann Brothers has never taken any trademark enforcement action against any of these entities.

### Wrongful Acts of Hoffmann Brothers

26.     Hoffmann Brothers has engaged in an organized scheme and campaign to lower the Company's organic search ranking, lower its online rating and harm Tom's and the Company's reputations.  On information and belief, Robert, as Hoffmann Brothers' CEO, has been primarily responsible for engineering such organized scheme and campaign.

27.     The scheme included causing employees of Hoffmann Brothers, their associates and friends to file false, defamatory and misleading statements about Tom and the Company.

28.     The scheme also included causing employees and friends to click on the Company's URL for the sole purpose of driving up the number of clicks, and thereby increasing the cost of advertising to the Company.

29.     Google provides a platform by which customers can rate and review businesses

67871678.2

by providing a rating on a scale of one star up to five stars. The platform further allows customers to "Share details of your own experience at this place." The site clearly informs prospective ratings providers that, "Your review will be posted publicly on the web."

30.     Despite never having used Tom or the Company for any service, numerous Hoffmann Brothers employees, friends and associates posted disparaging, defamatory and misleading ratings and reviews on Google as set forth in detail below (the "False Reviews"):

   a.  Angela Caputa, Director of Marketing at Defendant Hoffmann Brothers, provided the Company a one out of five star rating on Google My Business and stated on the site "Poses as hoffmann brothers. He is not a part of the company anymore. Very shady."

   b.  Katie Amsbury, Controller at Defendant Hoffmann Brothers, gave the Company a one out of five-star rating on Google My Business and stated on the site "this company is not Hoffmann Brothers Heating & Air Conditioning. They are trying to manipulate Google ads to trick customers that are looking for Hoffmann Brothers."

   c.  Joe Hoffmann, Manager of the Project Management Team at Defendant Hoffmann Brothers, posted on Google reviews about the Company stating "This company continues to misrepresent themselves to customers..."

   d.  Chris Hoffmann, Vice President of Defendant Hoffmann Brothers, gave the Company a one out of five star rating on Google. After Google removed that review, Chris Hoffmann posted yet another review on Google, giving the Company another one out of five star rating.

   e.  Teresa Hoffmann, wife of Defendant Hoffmann Brothers' Vice President

Chris Hoffmann, gave the Company a two out of five star rating on Google.

f.  Matt Moore, believed to be a friend of Defendant Hoffmann Brothers employees (Joe and Chris Hoffmann), and at the direction of said employees, gave the Company a one out of five star rating on Google and stated on the site "Buyer Beware: this is not Hoffmann Brothers, don't be tricked! Do not use them."

g.  Grant Pope, a friend of Chris Hoffmann and at the direction of Hoffmann Brothers, gave the Company a one out of five star rating on Google and stated on the site "This is a misrepresentative [sic]. This is not the real Hoffman Bros. Don't be tricked by this scam." Pope has never used the services of Tom or the Company.

h.  Justin Cole, a friend of Chris Hoffmann and at the direction of Hoffmann Brothers, gave the Company a one out of five star rating on Google and stated on the site "Do not be fooled, this is not the real Hoffmann Brothers. It is a shame how companies have to manipulate their customers and act like another company to get business." Cole has never used the services of Tom or the Company.

i.  Jake Pelikan, a friend of Chris Hoffmann and at the direction of Hoffmann Brothers, gave the Company a one out of five star rating on Google and stated on the site "This is NOT the real Hoffmann Brothers. This guy was expelled from the company is trying to confuse customers. Absolute SCAM." Pelikan has never used the services of Tom or the Company.

7

    j.   Riley O'Neill, a friend of Chris Hoffmann and at the direction of Hoffmann Brothers, gave the Company a one out of five star rating on Google and stated on the site "SCAM. This company is misrepresenting themselves as Hoffmann Brothers Heating & Air Conditioning Inc. Don't fall for it!" O'Neill has never used the services of Tom or the Company.

31.    The False Posts were disparaging, defamatory, slanderous, and caused economic harm to and damaged the good name and reputation of Tom and the Company.

### Chris and Joe Hoffmann's Defamatory Letter

32.    On December 19, 2018, Chris and Joe Hoffmann, respectively, the Vice President and the Manager of the Project Management Team at Defendant Hoffmann Brothers, wrote a letter (the "Family Letter") to 20 members of Tom's family (the "Hoffmann Family").  On information and belief, Robert, as the CEO of Hoffmann Brothers and Chris and Joe's father, played a significant role in the creation of the Family Letter.

33.    One of the stated goals of the letter was for Chris and Joe Hoffmann to "expose [what Chris and Joe Hoffmann believe] to be the true character of [Tom]…"

34.    Most of the individuals in the Hoffmann Family are customers of Tom and the Company.

35.    The Family Letter contained numerous misstatements, misrepresentations, defamatory statements and disparaging statements against Tom and the Company.

36.    The Family Letter wrongfully and defamatorily accused Tom and the Company of duping, overcharging, intentionally misleading and deceiving customers and manipulating customers' trust in Hoffmann Brothers in order to charge for excessive repairs.

37.    The Family Letter wrongfully and defamatorily called Tom an "unethical,

dishonest, greed-obsessed individual..."

38.    The Family Letter wrongfully and defamatorily accused Tom of wreaking "havoc on our family relationships, and who routinely sacrifices integrity for personal financial gain."

39.    Chris and Joe Hoffmann are officers and owners of Hoffmann Brothers, and the sons of Robert, the CEO of Hoffmann Brothers.

40.    The Family Letter was sent individually by Chris and Joe Hoffmann and as the "majority owners" and officers of Defendant Hoffmann Brothers.

41.    As a result of the Family Letter and Hoffmann Brothers' campaign to bully and destroy Tom, his Company, and their respective reputations, several members of the Hoffmann family as well as numerous long-time Hoffmann family friends have ceased business with, referrals to and/or communication with Tom and the Company.

### Harassment of Tom and the Company

42.    On information and belief, Hoffmann Brothers or agents acting at the direction of Hoffmann Brothers have filed a number of false police reports directed at Tom and the Company, including reports falsely accusing Tom and the Company of engaging in purported environmental and emissions violations, illegal parking and noise violations.

43.     On information and belief, Hoffmann Brothers or agents acting at the direction of Hoffmann Brothers have, without Tom's knowledge or consent, listed Tom's home address on Realtor.com, falsely reporting his home is for sale and prompting Tom and his family to receive numerous unsolicited and unwanted calls pertaining to his home purportedly being for sale.  In addition, on information and belief, Hoffmann Brothers or agents acting at the direction of Hoffmann Brothers, without Tom's knowledge or consent, used Tom's email address, name and phone number to make multiple inquiries on properties listed on Realtor.com, which in turn

flooded Tom's email inbox with unwanted messages and his telephone with unwanted calls.

44.     On information and belief, Hoffmann Brothers or agents acting at the direction of Hoffmann Brothers, without Tom's knowledge or consent, likewise made multiple searches and requests for quotes for different vehicles at Autotrader.com, using Tom's email address, name and phone number. This caused Tom and his family to receive numerous unsolicited and unwanted calls concerning his purported interest in several vehicles for sale.

45.     On information and belief, Hoffmann Brothers or agents acting at the direction of Hoffmann Brothers contacted numerous life insurance companies again using Tom's email address, name and phone number to inquire about purchasing life insurance without his knowledge or consent. This caused Tom and his family to receive numerous unsolicited and unwanted calls from solicitors pertaining to his purported interest in purchasing life insurance. On information and belief, Hoffmann Brothers or agents acting at the direction of Hoffmann Brothers have made defamatory and slanderous statements about Tom and the Company, falsely accusing Tom and the Company of dishonesty, lack of integrity and illegal and/or improper business practices, to Tom's family and both prospective and current clients of the Company.

## COUNT I

### Declaratory Judgment under the Federal Lanham Act and State Law

46.     Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

47.     Hoffmann Brothers sent a cease and desist letter, dated January 25, 2019, alleging that Plaintiffs were infringing on Hoffmann Brothers' trademarks by using the name "Hoffmann" in commerce.

48.     After this action was first brought in Missouri state court, Hoffmann Brothers

filed suit in this District in the case: *Hoffmann Bros. Heating and Air Conditioning, Inc. v. Hoffmann Air Conditioning & Heating, LLC, et al.*, No. 4:19-cv-00200-RWS (E.D. Mo. Feb. 8, 2019).

49.     Hoffmann Brothers' Complaint in the above-listed case contains, in part, a cause of action asserted under the Lanham Act (Count 2) for use of "Hoffmann" in commerce.

50.     Hoffmann Brothers' allegations, as borne out in its cease and desist letter and Complaint, allege Federal trademark infringement under the Lanham Act.  Plaintiffs deny that they have violated the Lanham Act, or infringed Hoffmann Brothers' trademarks.  Accordingly, a controversy exists concerning whether Plaintiffs' prior and continuing use of the term "Hoffmann" constitutes Federal Trademark infringement in violation of 15 U.S.C. § 1114, trademark infringement and dilution in violation of Mo. Rev. Stat. §§ 417.056 and -.061, and/or common law unfair competition.

51.     The Company has been utilizing "Hoffmann", the surname of Tom, in the name of its business for over a year and a half.

52.     The Trade Name Protection Clause restricting Tom's use of the name "Hoffmann" expired on July 14, 2015.

53.     Tom and the Company have the right to use Tom's surname of "Hoffmann" in the name of the Company and in their business because the contractual provision restricting such use has expired.

54.     There is no likelihood of confusion between Plaintiffs' use of Tom's surname "Hoffmann" in the Company name and any trademark or service marks owned by Hoffmann Brothers.

55.     Hoffman Brothers' asserted trademark in "Hoffman Brothers" is extremely weak,

merely descriptive as a surname, lacks secondary meaning, and not entitled to protection.

56.     As set forth above, another entity operates a heating and air conditioning business in the St. Louis area using the name "Hoff Heating and A/C, Inc."  Yet another entity operates a plumbing and heating business in the St. Louis area using the name "Hoffman Plumbing & Heating" – and, on information and belief, has done so since 1981.  There is yet another entity using the name "Hoffman Plumbing" in Warrenton, Missouri.  On information and belief, Hoffmann Brothers has never taken any trademark enforcement action against any of these entities.

57.     Tom and the Company have not (1) engaged in Federal trademark infringement in violation of 15 U.S.C. § 1114; (2) violated any other provisions of the Lanham Act; (3) violated any provisions of Missouri trademark law, including but not limited to, Mo. Rev. Stat. §§ 417.056 and -.061; (4) engaged in common law unfair competition; or (5) breached the Trade Name Protection Clause of the Agreement.

58.     A controversy therefore exists between the parties regarding the right of Tom and the Company to use "Hoffmann" in the name of the Company, and in advertising materials, websites, Google ads, search parameters, proposals and other aspects of the Company's business.

59.     By reason of the foregoing, there is a justiciable controversy between Plaintiffs and Defendant Hoffmann Brothers, and declaratory judgment is both necessary and proper in order to set forth and determine the rights and obligations that exist among the parties related to the name Hoffmann and the use thereof.

## COUNT II

### Breach of Contract

60.     Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, all

67871678.2

preceding paragraphs of this Complaint.

61.     Tom and Defendant Hoffmann Brothers entered into the Agreement, which constituted a valid, binding contract pursuant to Missouri law.

62.     Tom has fulfilled his obligations under the Agreement.

63.     Defendant Hoffmann Brothers has failed to perform its obligations under the Agreement and has breached the Agreement by, among other things:

    a.  disparaging Tom and the Company with the False Reviews;

    b.  disparaging Tom and the Company with the Family Letter;

    c.  making false police reports and accusations; and

    d.  on information and belief, disparaging Tom and the Company in other ways.

64.     As a direct and proximate cause of the breaches by Hoffmann Brothers, Tom and the Company have suffered economic damages, loss of business, reputational damages, loss of profit, loss of potential economic gain and other damages.

65.     As a direct and proximate cause of the breaches by Hoffmann Brothers, Tom and the Company have incurred attorney's fees, costs and expenses, which they are entitled to recover under the Agreement.

66.     If Defendant's wrongful conduct continues and is not enjoined, Tom and the Company will continue to suffer irreparable harm for which there is no adequate remedy at law, including but not limited to unjustified loss of customers, present and future economic loss, reputational harm, and loss of the rights granted under the Agreement.

## **COUNT III**

### **Defamation**

67.     Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

68.     Defendant Hoffmann Brothers published the False Reviews on Google, the Family Letter to Tom's family and customers of the Company, false police reports and accusations to the police department, and uttered slanderous comments in the presence of third parties (collectively, the "Defamatory Statements").

69.     Defendant Hoffmann Brothers knew the Defamatory Statements were false or Hoffmann Brothers published the Defamatory Statements with reckless disregard for whether the False Reviews were true or false at a time when Hoffmann Brothers had serious doubt as to whether they were true.

70.     The Defamatory Statements tended to deprive Tom and the Company of the benefit of public confidence, customer loyalty, positive customer reviews and rightful internet search ranking or rating.

71.     The Defamatory Statements were read or heard by the public in general and more specifically actual and potential customers of Tom and the Company and caused: the Company's Google rating to decrease from 5 to 3.1, Tom's family to lose trust and respect in Tom and the Company, the police to investigate Tom and the Company, and third parties, including but not limited to actual and potential customers, to lose trust and respect in Tom and the Company.

72.     Tom and the Company have suffered damages as a direct and proximate result of the Defamatory Statements.  Among other things, Tom's and the Company's reputations were damaged by the posting of the Defamatory Statements, and the Company lost profits as a result.

73.     The Defamatory Statements were outrageous because of Defendant Hoffmann Brothers' evil motive or reckless indifference to the rights of Tom and the Company, entitling

Plaintiffs to punitive damages.

74.     If Defendant's wrongful conduct continues and is not enjoined, Tom and the Company will continue to suffer irreparable harm for which there is no adequate remedy at law, including but not limited to unjustified loss of customers, present and future economic loss, reputational harm, and loss of the rights granted under the Agreement.

## COUNT IV

## False Light Invasion of Privacy

75.     Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

76.     Defendant Hoffmann Brothers placed Plaintiffs in a false light by:

   a.  disparaging Tom and the Company with the False Reviews;

   b.  disparaging Tom and the Company with the Family Letter;

   c.  disparaging Tom and the Company with false police reports and accusations; and

   d.  disparaging Tom and the Company with slanderous comments.

77.     The false light in which Plaintiffs were placed is highly offensive to a reasonable person, as it creates an impression that Tom and the Company are, among other things, fraudulent, unethical and dishonest.

78.     Defendant Hoffmann Brothers had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Tom and the Company would be placed.

79.     Tom's and the Company's reputations were damaged as a direct and proximate result of the posting of the Defamatory Statements, and the Company lost profits as a result.

15

80.      Defendant Hoffmann Brothers' conduct was outrageous, and demonstrates evil motive or reckless indifference to the rights of Tom and the Company, entitling Plaintiffs to punitive damages.

81.      If Defendant's wrongful conduct continues and is not enjoined, Tom and the Company will continue to suffer irreparable harm for which there is no adequate remedy at law, including but not limited to unjustified loss of customers, present and future economic loss, reputational harm, and loss of the rights granted under the Agreement.

## COUNT V

### Intentional Infliction of Emotional Distress

82.      Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

83.      Defendant Hoffmann Brothers engaged in extreme and outrageous conduct by:

  a.   defaming Tom to his family in the Family Letter, sent four days before Christmas;

  b.   filing false police reports and accusations against Tom; and

  c.   posing as Tom by using his name, email address, and phone number to make numerous false inquiries on Realtor.com, Autotrader.com, and various life insurance websites in an attempt to falsely lead third parties to believe he was selling his home and interested in purchasing numerous other real estate properties, vehicles, and life insurance policies.

84.      Sending a defamatory letter about a person to that person's family four days before Christmas, for the express purpose of injuring that person's character in the eyes of his family, is outrageous in character, and is so extreme in degree, as to go beyond all possible

bounds of decency.

85.     Likewise, filing false police reports and posing as Tom on Internet sites to make others believe Tom was selling his home, and/or interested in purchasing other real estate properties, vehicles, and life insurance, thereby bombarding him and his family with unwanted solicitations are actions that are so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.

86.     Defendant Hoffmann Brothers' conduct was intended only to cause extreme emotional distress to the victim.

87.     Tom suffered mental anguish and reputational harm as a direct and proximate result of Defendant Hoffmann Brothers' conduct.

88.     Defendant Hoffmann Brothers' conduct was outrageous, and demonstrates evil motive or reckless indifference to the rights of Tom and the Company, entitling Plaintiffs to punitive damages.

89.     If Defendant's wrongful conduct continues and is not enjoined, Tom and the Company will continue to suffer irreparable harm for which there is no adequate remedy at law, including but not limited to unjustified loss of customers, present and future economic loss, reputational harm, and loss of the rights granted under the Agreement.

## COUNT VI

## Fraud

90.     Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

91.     Defendant Hoffmann Brothers made the following false statements, among others:

     a.   Caputa was a customer of the Company;

     b.   Amsbury was a customer of the Company;

     c.   Chris Hoffmann was a customer of the Company; and

     d.   Feigning false interest in utilizing the services of the Company by clicking on the Company's URL on Google ("Fraudulent Clicks").

92.    Defendant Hoffmann Brothers directed its employees and associates to make a false statement that they were interested in utilizing the services of Company by clicking on the Company's URL on Google.

93.    Defendant Hoffmann Brothers knew the statements were false.

94.    Defendant Hoffmann Brothers knew the Fraudulent Clicks and/or inflating the Google AdWords campaign would cause the Company to incur additional click fees with Google.

95.    Defendant Hoffmann Brothers intended for the false statements to be relied upon by customers and consumers to not engage the Company for services.

96.    Defendant Hoffmann Brothers intended for the Fraudulent Clicks and/or inflating the Google AdWords campaign to be relied upon by the Company in continuing to advertise with Google.

97.    The Company did rely on the Fraudulent Clicks being actual leads and continued to advertise with Google.

98.    The Company had the right to rely on the representations that the clicks were legitimate because it neither knew nor was in a position to know that Hoffmann Brothers was behind the Fraudulent Clicks.

99.    As a direct and proximate result of its reliance on the representations, the

Company was damaged by, among *inter alia*, making inflated payments to Google AdWords and spending time and resources in investigating and responding to false claims made by Hoffmann Brothers and its agents.

100.    Defendant Hoffmann Brothers' conduct was outrageous, and demonstrates evil motive or reckless indifference to the rights of Tom and the Company, entitling Plaintiffs to punitive damages.

101.    If Defendant's wrongful conduct continues and is not enjoined, Tom and the Company will continue to suffer irreparable harm for which there is no adequate remedy at law, including but not limited to unjustified loss of customers, present and future economic loss, reputational harm, and loss of the rights granted under the Agreement.

## COUNT VII

## Tortious Interference

102.    Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

103.    Defendant Hoffmann Brothers knew the Company had a business relationship and/or valid expectancy of a business relationship with customers to provide services.

104.    Defendant Hoffmann Brothers knew customers and potential customers would read the False Reviews and the Family Letter.

105.    Defendant Hoffmann Brothers intentionally and maliciously interfered with the Company's relationship with existing customers and potential customers by issuing the defamatory False Reviews and the Family Letter.

106.    Defendant Hoffmann Brothers intentionally and maliciously interfered with the Company's relationship with customers and potential customers by causing friends and

associates to issue the defamatory False Reviews and the Family Letter.

107.    The False Reviews and the Family Letter were issued without justification.

108.    The Company was damaged as a result of Defendant Hoffmann Brothers' interference with the Company's relationship with existing customers and its expectancy of relationships with potential customers.

109.    As a direct and proximate result of Hoffmann Brothers' smear campaign, the Company was damaged by a loss in business from former, current, and prospective clients.

110.    As a direct and proximate result of Hoffmann Brothers' smear campaign, including but not limited to the False Reviews and the drop in the Company's star rating on Google, the Company has been damaged by the loss of business from former, current, and prospective clients but for the decline in its rating and the negative reviews.

111.    Defendant Hoffmann Brothers' conduct was outrageous, and demonstrates evil motive or reckless indifference to the rights of Tom and the Company, entitling Plaintiffs to punitive damages.

112.    If Defendant's wrongful conduct continues and is not enjoined, Tom and the Company will continue to suffer irreparable harm for which there is no adequate remedy at law, including but not limited to unjustified loss of customers, present and future economic loss, reputational harm, and loss of the rights granted under the Agreement.

## COUNT VIII

### Civil Conspiracy

113.    Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

114.    Defendant Hoffmann Brothers conspired and agreed with, among others, Teresa

67871678.2

Hoffmann, Matt Moore, Grant Pope, Justin Cole, Jake Pelikan, and Riley O'Neill (collectively, the "Co-Conspirators") to participate in the exercise of Fraudulent Clicks and/or to post the False Reviews and participate in Fraudulent Clicks.

115.     Fraudulent Clicking is an unlawful act because it is an act of fraud.

116.     Posting the False Reviews is an unlawful act because it is defamatory and a false light invasion of privacy.

117.     Hoffmann Brothers and its Co-Conspirators did in fact commit those acts, in pursuit of the conspiracy.

118.     Tom and the Company were damaged as a direct and proximate result of Hoffmann Brothers and the Co-Conspirators' acts.

119.     Defendant Hoffmann Brothers' and the Co-Conspirator's conduct was outrageous, and demonstrates evil motive or reckless indifference to the rights of Tom and the Company, entitling Plaintiffs to punitive damages.

120.     If Defendant's wrongful conduct continues and is not enjoined, Tom and the Company will continue to suffer irreparable harm for which there is no adequate remedy at law, including but not limited to unjustified loss of customers, present and future economic loss, reputational harm, and loss of the rights granted under the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant Hoffmann Brothers as follows:

1.     awarding Plaintiffs damages in an amount in excess of $25,000, plus costs and expenses;

2.     awarding Plaintiffs pre-judgment interest and post-judgment interest;

3.      awarding Plaintiffs their attorneys' fees and expenses incurred in connection with this matter, pursuant to the Agreement as well as 15 U.S.C. § 1117;

4.      awarding Plaintiffs punitive damages;

5.      issuing a preliminary and final injunction prohibiting and restraining Hoffman Brothers and its directors, officers, agents, servants, employees, and all other persons in active concert, cooperation, privity or participation with it from:

  a.  posting any false reviews or ratings of Plaintiffs;

  b.  falsely representing themselves as customers of Plaintiffs;

  c.  submitting any fraudulent clicks or soliciting others to submit fraudulent clicks on Plaintiffs' website;

  d.  defaming, disparaging, or otherwise publishing false statements about Plaintiffs;

  e.  falsely representing themselves as Plaintiffs by using Tom and/or the Company's name, email address, phone number or other identifying information to pose as Tom or the Company on the Internet or otherwise; and

  f.  making false police reports and accusations against Plaintiffs;

6.      declaring, decreeing and adjudging that:

  a.  Plaintiffs were and are authorized to use "Hoffmann" in the name of the Company, in advertising materials, websites, google ads, search parameters, proposals and other aspects of its business; and

  b.  Plaintiffs have not infringed and will not infringe on any trademark or other protectable interest of Defendant in using the name "Hoffmann;"

c.   Plaintiffs have not engaged in Federal trademark infringement in violation of 15 U.S.C. § 1114;

d.   Plaintiffs have not violated any other provision of the Lanham Act;

e.   Plaintiffs have not violated any provisions of Missouri trademark law, including but not limited to, Mo. Rev. Stat. §§ 417.056 and 417.061;

f.   Plaintiffs have not engaged in common law unfair competition; and

g.   Plaintiffs have not breached the Trade Name Protection Clause of the Agreement or any other provision of the Agreement; and

7.   awarding such other and further relief as the Court deems just and proper under the circumstances.

**Dated:  March 22, 2019**

Respectfully submitted,

POLSINELLI PC

By: */s/ Keith J. Grady*
KEITH J. GRADY (MO ##46757)
GRAHAM L. DAY (MO ##45687)
SEAN M. PLUTA (MO #70300)
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
(314) 889-8000
Fax No: (314) 231-1776 Fax
kgrady@polsinelli.com
gday@polsinelli.com

**ATTORNEYS FOR PLAINTIFFS THOMAS E. HOFFMANN & HOFFMANN AIR CONDITIONING & HEATING, LLC**

67871678.2

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on **March 22, 2019**, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all parties of record.

*/s/ Keith J. Grady*

24